IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN DRYDEN,

        Plaintiff,

vs.

ASSET ACCEPTANCE, LLC;
CAPITAL ONE BANK;
HSBC RETAIL SERVICES, INC.
d/b/a HSBC BANK NEVADA, N.A.;
PLAZA ASSOCIATES;
PRESIDIO/CM;
WASHINGTON MUTUAL, INC. d/b/a PROVIDIAN;
EQUIFAX INFORMATION SERVICES, LLC.; and
EXPERIAN INFORMATION SOLUTIONS, INC.;

        Defendants.

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
AND DEMAND FOR JURY TRIAL**

### Introduction

1. Plaintiff Martin Dryden is the victim of identity theft. Defendants Asset Acceptance, LLC, Capital One Bank, HSBC Retail Services, Inc. d/b/a HSBC Bank Nevada, N.A., Plaza Associates, Presidio/CM, and Washington Mutual, Inc. d/b/a Providian report accounts as belonging to Mr. Dryden when the accounts are not his accounts.

2. Mr. Dryden has disputed these accounts with the three national credit reporting agencies: Trans Union, LLC, and Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., who are required by law to forward the disputes to the creditors, but the Defendants continue to report these accounts. Trans Union, on the other hand, removed the identity theft accounts from Mr.

Dryden's Trans Union credit report.

3. Defendant Presidio has engaged in unlawful debt collection activity.

4. As a result of reporting inaccurate information, and engaging in unlawful debt collection activity, Defendants have harmed Mr. Dryden, including damaging his credit reputation and credit score. Mr. Dryden seeks damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and under the New Mexico Unfair Practices Act ("UPA") 1978 § 57-12-1 *et. seq.*

## Jurisdiction

5. This Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331, 1337. This Court has supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

## Parties

6. Plaintiff Martin Dryden resides in Santa Fe, New Mexico. He is a "consumer" as defined by § 1681a(c) of the FCRA, and as defined by § 1692a(3) of the FDCPA.

7. Defendant Asset Acceptance, LLC is a foreign limited liability company doing business in New Mexico as a debt collector. Asset Acceptance is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Asset Acceptance regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

8. Defendant Capital One Bank is a foreign corporation that provides credit card accounts to consumers throughout the United States, including in New Mexico.

Capital One is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Capital One regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

9. Defendant HSBC Retail Services, Inc. d/b/a HSBC Bank Nevada, N.A. is a foreign corporation that provides credit card accounts to consumers throughout the United States, including in New Mexico. HSBC is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). HSBC regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

10. Defendant Plaza Associates is a foreign company doing business in New Mexico as a debt collector. Plaza Associates is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Plaza Associates regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

11. Defendant Presidio/CM, is a foreign company doing business in New Mexico as a debt collector. Presidio's principal business is the collection of consumer debts. It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. It has been engaged by multiple creditors to do so. Presidio is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Also, Presidio is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Presidio regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies

about its consumer transactions.

12. Defendant Wahington, Mutual, Inc., d/b/a Providian is a foreign corporation that provides credit card accounts to consumers throughout the United States, including in New Mexico. Providian is a "furnisher of information" as contemplated by the FCRA, 15 U.S.C. §§ 1681s-2(a) and (b). Providian regularly and in the ordinary course of its business furnishes information to one or more consumer reporting agencies about its consumer transactions.

13. Defendant Equifax Information Services, LLC is a foreign limited liability company which is a "consumer reporting agency" as defined by § 1681a(f) of the FCRA. Equifax assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. Equifax uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.  Equifax is a national credit reporting agency.

14. Defendant Experian Information Solutions, Inc. is a foreign corporation which is a "consumer reporting agency" as defined by § 1681a(f) of the FCRA.  Experian assembles or evaluates consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. Experian uses means of interstate commerce for the purpose of preparing or furnishing consumer reports.  Experian is a national credit reporting agency.

### Facts

15. Mr. Dryden's father, Malcolm D. Dryden, used Mr. Dryden's personal information to open several credit accounts without Mr. Dryden's knowledge or permission.

16. These accounts opened by Mr. Dryden's father include accounts opened with,

purchased by, or collected by Asset Acceptance, Capital One, HSBC, Plaza Associates, Presidio, and Providian ("Defendant Furnishers").

17. The Defendant Furnishers reported the Accounts to Equifax and Experian ("Defendant Credit Reporting Agencies").

18. Mr. Dryden disputed the identity theft accounts through procedures provided for by Congress via the FCRA, but Defendants continue to report several accounts that are not his accounts.

19. On March 9, 2007, Mr. Dryden sent a letter to Trans Union, LLC in which he disputed several accounts, including accounts being reported by Asset Acceptance, Capital One, HSBC, Plaza Associates, and Providian. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license and a copy of an affidavit from his father, Malcolm D. Dryden, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission.

20. Trans Union received Mr. Dryden's March 9 letter, along with the supporting documents, on March 13, 2007.

21. Trans Union sent Mr. Dryden a letter, dated April 11, 2007, in which it stated that it had completed its investigation. This letter included a copy of Mr. Dryden's credit report. Trans Union deleted all of the accounts disputed by Mr. Dryden.

22. However, despite similar disputes to Equifax and Experian, these credit reporting agencies continue to report the identity theft accounts.

23. As a result of Defendants' actions, the growth of Mr. Dryden's business has been limited. The humiliation caused by the inaccurate reporting on his credit report has prevented him from applying for credit needed to invest in his business. Mr. Dryden's inability to seek credit for his business has limited the business' retail and service opportunities, and in turn it's ability to grow its brand name and customer base. Further, Mr. Dryden's inability to obtain credit for his business has hindered its ability to compete in a highly competitive and rapidly growing industry.

24. As a result of Defendants' actions and inactions, Mr. Dryden has suffered actual damages, including but not limited to:

   a. damage to his credit reputation;

   b. damage to his credit rating and credit score;

   c. out of pocket expenses;

   d. lost credit opportunities;

   e. humiliation; and

   f. aggravation and frustration.

### Facts Relating to Equifax

25. Mr. Dryden wrote a letter to Equifax on or about December 19, 2006. In the letter, he requested a copy of his credit report. He provided his name, social security number, date of birth, and mailing address. Also, he stated his belief that his Equifax credit report contained inaccurate information.

26. Equifax sent Mr. Dryden a letter, dated February 1, 2007, requesting more documentation for identification and address verification purposes.

27. Mr. Dryden wrote a second letter to Equifax on or about February 16, 2007. In the letter, he requested a copy of his credit report. He provided his name, social security number, date of birth, and home address. Also, he stated his belief that his Equifax credit report contained inaccurate information. Equifax received this letter on February 24, 2007.

28. Equifax sent Mr. Dryden two letters, dated February 28, 2007, both stating that it had completed its investigation.

29. One of the Equifax letters stated that the investigation resulted in the update of Mr. Dryden's date of birth. This letter included a copy of Mr. Dryden's credit report ("First Equifax Credit Report").

30. The other Equifax letter stated that the investigation resulted in the update of Mr. Dryden's current address. This letter also included a copy of Mr. Dryden's credit report ("Second Equifax Credit Report").

31. The First Equifax Credit Report and the Second Equifax Credit Report differ substantially.

32. Upon information and belief, Equifax is maintaining multiple credit files for Mr. Dryden.

33. The First Equifax Credit Report includes Chase Bank and HSBC Bank accounts not reported on the Second Equifax Credit Report.

34. The Second Equifax Credit Report includes Capital One, FCNB, First Consumer National Bank, Presidio, and Providian accounts not reported on the First Equifax Credit Report.

35. In the First Equifax Credit Report, Equifax reported the following accounts as Mr.

Dryden's accounts:

    a.    Asset Acceptance Corp -    Account # Providian - 1541*

    b.    HSBC -    Account # 544045006153*

These accounts are not Mr. Dryden's accounts.

36. In the Second Equifax Credit Report, Equifax reported the following accounts as Mr. Dryden's accounts:

    a.    Asset Acceptance Corp -    Account # Providian - 1541*

    b.    Capital One -    Account # 412174166277*

    c.    Presidio/CM-    Account # 518913101106*

    d.    Providian -    Account # 554285050094*

These accounts are not Mr. Dryden's accounts.

37. Equifax sent Mr. Dryden five letters, one dated March 22, 2007, one dated March 26, 2007, and three dated April 14, 2007, in which it stated that Mr. Dryden's credit file could not be accessed with the information provided by Mr. Dryden. Equifax requested further identification information from Mr. Dryden.

38. Equifax sent Mr. Dryden another letter, dated March 25, 2007, in which it stated that it had completed its investigation. This letter included a copy of Mr. Dryden's credit report ("Third Equifax Credit Report"). Equifax deleted the Presidio account. Equifax requested that Mr. Dryden provide it with a copy of his Social Security card and driver's license or birth certificate to update his name and date of birth.  In this letter, Equifax did not mention any investigation of the Asset Acceptance, Capital One, HSBC, Presidio, or Providian accounts.

39. In the Third Equifax Credit Report, Equifax did not report the Asset Acceptance,

8

Capital One, HSBC, Presidio, or Providian accounts.

40. Equifax sent Mr. Dryden two more letters on or about April 16, 2007, both stating that it had completed its investigation. In neither of the letters or credit reports did Equifax mention any investigation of the Capital One or HSBC accounts. Each letter included copy of Mr. Dryden's credit report ("Fourth Equifax Credit Report" and "Fifth Equifax Credit Report").

41. Equifax did not report the Capital One or HSBC accounts on the Fourth Equifax Credit Report or the Fifth Equifax Credit Report.

42. The Fourth Equifax Credit Report and the Fifth Equifax Credit Report differ substantially.

43. In the Fourth Equifax Credit Report, Equifax deleted the Asset Acceptance account.

44. However, in the Fifth Equifax Credit Report, Equifax continued to report the Asset Acceptance account.

45. On July 26, 2007, Mr. Dryden sent another letter to Equifax, in which he disputed the accounts being reported by Capital One, HSBC, Plaza Associates, and Providian. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license, a copy of his social security card, and a copy of an affidavit from his father, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission.

46. Equifax received Mr. Dryden's July 26 letter, along with the supporting

documents, on July 29, 2007.

47. Equifax sent Mr. Dryden three letters, dated July 31, 2007, August 10, 2007, and August 11, 2007, in which it stated that it had received his request for investigation, but it was unable to locate his credit file with the information he provided. Again, in all three letters, Equifax requested identification information from Mr. Dryden.

48. Mr. Dryden had already provided Equifax with his full name, date of birth, Social Security number, home address and post office box address, along with a copy of his driver's licence and his Social Security card.

49. On September 21, 2007, Mr. Dryden sent another letter to Equifax in which he disputed the accounts being reported by Capital One, HSBC, Plaza Associates, and Providian. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license, a copy of his social security card, and a copy of an affidavit from his father, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission.

50. Equifax received Mr. Dryden's September 21 letter, along with supporting documents, on October 10, 2007.

51. Equifax sent Mr. Dryden two letters, dated October 11, 2007, and October 19, 2007, in which it stated that it had received his request for investigation, but it was unable to locate his credit file with the information he provided. Again, in both letters, Equifax requested identification information from Mr. Dryden.

52. Mr. Dryden had already provided Equifax with his full name, date of birth, Social Security number, home address and post office box address, along with a copy of his driver's licence and his Social Security card.

53. On November 30, 2007, Mr. Dryden sent another letter to Equifax in which he disputes the accounts being reported by Capital One, HSBC, Plaza Associates, and Providian. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He explained that he was unable to provide Equifax with a utility bill, pay stub, driver's license, deed or rental agreement that show his P.O. Box address. He enclosed with the letter a copy of his driver's license, a copy of his social security card, and a copy of an affidavit from his father, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission. He also enclosed a copy of his bank statement showing his P.O. Box address as further proof of his identity and address.

54. Equifax received Mr. Dryden's November 30 letter, along with supporting documents, on December 3, 2007.

55. Equifax sent Mr. Dryden a letter, dated December 6, 2007, in which it stated that it had received his request for investigation, but it was unable to locate his credit file with the information he provided. Again, Equifax requested identification information from Mr. Dryden.

56. Mr. Dryden had already provided Equifax with his full name, date of birth, Social Security number, home address and post office box address, along with a copy

of his driver's licence showing his home address, his Social Security card, and a bank statement showing his post office box address.

57. Equifax did not perform any investigation, or it performed unreasonable investigations, of the accounts reported by Asset Acceptance, Capital One, HSBC, Plaza Associates, and Providian.

### Facts Relating to Experian

58. On October 16, 2006, Mr. Dryden obtained his Experian credit report on the internet.

59. In Mr. Dryden's Experian credit report, Experian reported the following accounts as Mr. Dryden's accounts:

   a. Asset Acceptance Corp -   Account # 1541XXXX

   b. Cap One Bk -              Account # 41217416XXXX

   c. HSBC -                    Account # 544045006153XXXX

   d. Presidio/CM-              Account # 518913101106XXXX

   e. Providian -               Account # 050094XXXX

   These accounts are not Mr. Dryden's accounts.

60. On March 9, 2007, Mr. Dryden sent a letter to Experian in which he disputed the accounts being reported by Asset Acceptance, Capital One, HSBC, Presidio, and Providian. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license and a copy of an affidavit from his father, in which his father states that the disputed accounts were opened without Mr. Dryden's

knowledge or permission.

61. Experian received Mr. Dryden's March 9 letter, along with supporting documents, on March 15, 2007.

62. Experian sent Mr. Dryden a letter, dated March 21, 2007, in which it stated that it was unable to use the information provided by Mr. Dryden.

63. Experian sent Mr. Dryden a letter, dated April 10, 2007, in which it stated that it had completed its investigation. This letter included a copy of Mr. Dryden's credit report. Experian deleted the Asset Acceptance and Providian accounts. However, Experian continued to report the Capital One, HSBC, and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

64. On July 26, 2007, Mr. Dryden sent another letter to Experian in which he disputed the accounts being reported by Capital One, HSBC, and Presidio. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license, a copy of his social security card, and a copy of an affidavit from his father, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission.

65. Experian received Mr. Dryden's July 26 letter, along with supporting documents, on August 1, 2007.

66. Experian sent Mr. Dryden a letter, dated July 31, 2007. The letter included a copy of Mr. Dryden's credit report. Experian continued to report the Capital One,

HSBC, and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

67. Experian sent Mr. Dryden second letter, dated July 31, 2007. The letter included a copy of Mr. Dryden's credit report. Experian continued to report the Capital One, HSBC, and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

68. The two July 31 Experian credit reports differ in that one included an additional address in the personal information section.

69. Experian sent Mr. Dryden another letter, dated August 28, 2007, in which it stated that it had completed its investigation. The letter included a copy of Mr. Dryden's credit report. Experian continued to report the Capital One, HSBC and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

70. On September 21, 2007, Mr. Dryden sent another letter to Experian in which he disputed the accounts being reported by Capital One, HSBC, and Presidio. He stated that he was the victim of identity theft, and that the disputed accounts were opened without his knowledge or permission. He requested an investigation of these accounts. He enclosed with the letter a copy of his driver's license, a copy of his social security card, and a copy of an affidavit from his father, in which his father stated that the disputed accounts were opened without Mr. Dryden's knowledge or permission.

71. Experian received Mr. Dryden's September 21 letter, along with supporting documents, on October 11, 2007.

72. Experian sent Mr. Dryden a letter, dated October 18, 2007. The letter included a copy of Mr. Dryden's credit report. However, Experian did not mention Mr. Dryden's dispute or any investigation of the disputed accounts. Also, Experian continued to report the Capital One, HSBC and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

73. Experian sent Mr. Dryden a letter, dated December 6, 2007. The letter included a copy of Mr. Dryden's credit report. However, Experian did not mention Mr. Dryden's dispute or any investigation of the disputed accounts. Also, Experian continued to report the Capital One, HSBC and Presidio accounts. The new report did not note that Mr. Dryden disputed the Capital One or Presidio accounts.

74. Experian did not perform any investigations, or it performed unreasonable investigations, of the accounts reported by Capital One, HSBC, and Presidio.

### Facts Relating to the Defendant Credit Reporting Agencies

75. Equifax and Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information contained on Mr. Dryden's credit report.

76. Equifax and Experian failed to conduct a genuine and reasonable investigation in response to Mr. Dryden's repeated disputes concerning the identity theft accounts.

77. Equifax and Experian failed  to review all relevant information provided by Mr. Dryden.

78. Equifax and Experian failed to provide all relevant information provided by Mr.

Dryden to Defendant Furnishers.

79. Equifax and Experian persisted in reporting information that they knew or should have known to be inaccurate and damaging.

### Facts Relating to the Defendant Furnishers

80. The Defendant Furnishers have continued to report the several accounts that are not Mr. Dryden's accounts to the Defendant Credit Reporting Agencies as Mr. Dryden's accounts.

81. As set forth above, Mr. Dryden disputed these inaccurate accounts to the Defendant Credit Reporting Agencies.

82. Upon information and belief, the Defendant Credit Reporting Agencies notified the Defendant Furnishers of Mr. Dryden's dispute, pursuant to 15 U.S.C. § 1681i(a)(2).

83. The Defendant Furnishers failed to investigate the disputed accounts, or failed to perform reasonable investigation, and failed to review all relevant information provided by Mr. Dryden, and by the Defendant Credit Reporting Agencies, regarding Mr. Dryden's dispute, in violation of 15 U.S.C. § 1681s-2(b).

84. Presidio failed to report to Experian that Mr. Dryden disputed its account.

### First Claim for Relief:
### Violations of the FCRA by Defendant Furnishers

85. The actions of the Defendant Furnishers were willful or, in the alternative, negligent, violations of the FCRA, including but not limited to, 15 U.S.C. § 1681s-2b.

86. Mr. Dryden is entitled to actual and punitive damages, plus attorney fees and costs.

### Second Claim for Relief:
### Violations of the FCRA by Equifax and Experian

87. The actions of Defendants Equifax and Experian were willful, or, in the alternative, negligent violations of the FCRA, including but not limited to 15 U.S.C. §§ 1681e, 1681g, and 1681i.

88. Mr. Dryden is entitled to actual and punitive damages, plus attorney fees and costs.

### Third Claim for Relief:
### Violations of the FDCPA by Presidio

89. The actions of Presidio violate the FDCPA, including 15 U.S.C. § 1692e(8).

90. Mr. Dryden is entitled to actual damages and statutory damages, plus attorney fees and costs.

### Fourth Claim for Relief:
### Violations of the Unfair Practices Act

91. The Defendants' actions concerning Mr. Dryden's account occurred in the regular course of their trade or commerce.

92. The actions of the Defendants constitute unfair trade practices, within the meaning of the UPA, NMSA 1978 § 57-12-2(D).

93. The Defendants willfully engaged in these unlawful trade practices.

94. Mr. Dryden requests that the Court enjoin the Defendants under the UPA from reporting the inaccurate accounts on Mr. Dryden's credit report or to any credit reporting agency.

95. Mr. Dryden is entitled to statutory or actual damages, trebled, plus attorney fees and costs.

### Jury Demand

96.     Mr. Dryden requests trial by six person jury on all issues so triable.

### Request for Relief

Mr. Dryden requests that this Court:

    A.    Declare that it is unlawful for Defendants to report the identity theft accounts on Mr. Dryden's credit report;

    B.    Enjoin Defendants from reporting the identity theft accounts on Mr. Dryden's credit report or to any credit reporting agency;

    C.    Award actual damages and punitive damages, for violations of the FCRA;

    D.    Award actual damages and statutory damages, against Presidio, under the FDCPA;

    E.    Award statutory damages or actual damages, trebled, for violations of the UPA;

    F.    Award reasonable attorney fees and costs;

    G.    Award any further relief this Court deems just.

Respectfully submitted,

FEFERMAN & WARREN

_/s/_

CHARLES PARNALL
ROB TREINEN
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773
(505) 243-6663 (fax)